1
2
3
4
5
6
7
8
9
10
11

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

12  ELECTRA CRUISES, INC., a        )   Case No.11CV1798 AJB (DHB)
    corporation and LYNDA M.        )
13  GUINTHER, an individual,        )
                                    )   ORDER GRANTING IN PART AND
14              Plaintiff,          )   DENYING IN PART
    v.                              )   DEFENDANT'S MOTION FOR
15                                  )   PARTIAL SUMMARY JUDGMENT
    CAMPING WORLD RV SALES, a       )
16  business entity, form unknown, et al.,  )
                                    )
17              Defendants.         )
                                    )
18
19
20
21          Presently before the Court is Defendant Stier's RV Centers, LLC dba Camping World

22  RV Sales ("Stier's" ) and Defendant Freedom Roads LLC's (collectively "Defendants")

23  Motion for Summary Judgment or in the alternative Motion for Summary Adjudication. For

24  the reasons stated, the Court GRANTS in part and DENIES in part Defendant's Motion for

25  Partial Summary Judgment.

26  **I. BACKGROUND**

27          Plaintiffs commenced this action in the Superior Court of California, County of San

28  Diego, on August 11, 2011. Plaintiffs alleged violations of the Song-Beverly Consumer

11CV1798

1   Warranty Act, Magnuson-Moss Warranty Act ("Magnuson-Moss Act"), and negligent repair

2   against Defendants and other parties who are no longer a part of this action.  Defendants

3   removed the action pursuant to 28 U.S.C. § 1441(b). (Doc. No. 1.)  Plaintiffs filed an

4   Amended Complaint ("FAC") on June 12, 2012. (Doc. No. 38.)  The FAC contains only the

5   Magnuson-Moss Act and negligent repair causes of action.

6          Plaintiffs are Electra Cruises Inc. ("Electra"), a corporation that operates a fleet of

7   yachts for weddings and corporate events, and Lynda Guinther, the Chief Financial Officer

8   of Electra in her individual capacity. (Doc. No. 85 at 2.)  Plaintiffs purchased the 2009

9   American Coach, American Heritage motor home at a recreational show in Pomona

10  California in October of 2008. The motor home was manufactured by American Coach, a

11  division of Fleetwood Enterprises Inc ("Fleetwood"). (*Id.* at 2-3.) Fleetwood has since filed

12  for bankruptcy and has liquidated.  (*Id.* at 3.)  Defendant Stier's operates a recreational

13  vehicle dealership and was on site at the Pomona RV show to assist Fleetwood in sales

14  transactions should attendees desire to buy a motor home. (*Id.* at 4.)

15         Plaintiffs wished to purchase the motor home for business purposes, specifically as

16  a groom's dressing room and wedding rental, as well as personal recreational activities.

17  (Doc. No. 91 at 2).  Plaintiffs were unable to identify a suitable motor home onsite, but did

18  identify a floor plan to their liking from an American Heritage brochure.  (*Id.*) Specifically,

19  Plaintiffs desired the galley pull out feature. (Doc. No. 85 at 5.)  Fleetwood representatives

20  located a unit at a Georgia dealership that purportedly had a galley pull out.  (*Id.*)  Relying

21  upon the Fleetwood representative, Plaintiffs negotiated a purchase price of $603,888.63

22  and made a down payment for the motor home payable to Stier's.  (*Id.* at 2, 5-6; Doc. No.

23  91 at 3.)  However, when the subject motor home was delivered to a San Marcos, California

24  facility, the parties realized that motor home did not have the desired galley pull out. (*Id.* at

25  6-7.)  Morever, according to Plaintiffs FAC the motor home was delivered with material

26  defects such as blown fuses, house battery not charging, defective slide-outs, defective

27  generator, and so forth.  (*Id.* at 3.) Plaintiffs expressed the desire to continue with the

28  transaction but to have the motor home redesigned and reconfigured to meet their

1   expectations. (*Id.* at 7.)  Representatives from Fleetwood informed the parties that they

2   would make the necessary changes and Stier's confirmed this promise in writing. (*Id.* at 7-

3   8.)  The price settled upon for the renovations was $11,000. (*Id.*)  Plaintiffs also requested

4   additional work to be completed on the motor home.  (*Id.* at 9.)  Plaintiffs delivered the

5   motor home in December 2009 to Fleetwood for transport to the Fleetwood factory in

6   Indiana. (*Id.* at 8.)  Fleetwood completed the work in two months, however it appears that

7   the results were less than satisfactory.  Plaintiffs alleged a number of material defects as well

8   as cosmetic problems associated with the reconfiguration. (Doc. No. 38 at 3-4.)  The parties

9   were unable to privately negotiate an acceptable arrangement, and thus the instant lawsuit.

10      Numerous cross-claims were filed then dismissed.  On February 20, 2013 Defendants

11  filed the instant Motion for Summary Judgment seeking partial summary judgment on a

12  number of issues.  (Doc. No. 66)  Plaintiffs filed their Response on March 15, 2013. (Doc.

13  No. 91.)

14  **II. DISCUSSION**

15  **A. Legal Standard**

16      Summary judgment is appropriate if the "pleadings, depositions, answers to

17  interrogatories, and admissions on file, together with the affidavits, if any, show that there

18  is no genuine issue as to any material fact and that the moving party is entitled to judgment

19  as a matter of law." Fed. R. Civ. P. 56(e) (West 2006).  A dispute about a material fact is

20  genuine "if the evidence is such that a reasonable jury could return a verdict for the

21  nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505

22  (1986).  In considering the motion, the court must examine all the evidence in the light most

23  favorable to the non-moving party and "all justifiable inferences are to be drawn in his

24  favor." *Id.* at 255, 267.

25      When the moving party does not bear the burden of proof, summary judgment is

26  warranted by demonstration of an absence of facts to support the non-moving party's case."

27  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548 (1986).  Summary judgment

28  must be granted if the party responding to the motion fails "to make a sufficient showing on

11CV1798

1    an essential element of her case with respect to which she has the burden of proof." *Id.* at

2    323.

3    **B. Issues for Summary Judgment**

4    1. **Stier's Alleged Breach of Any Implied Warranty of Merchantability and/or Fitness**

5    **and Subsequently the Magnuson-Moss Act.**

6         The Magnuson Moss Act provides that a consumer may assert a civil cause of action

7    to enforce the terms of an implied or express warranty. 15 U.S.C. §§ 2301-2312, et seq.

8    Section 2310(d) provides that any "consumer who is damaged by the failure of a supplier,

9    warrantor, or service contractor to comply with any obligation under this chapter, or under

10   a written warranty, implied warranty, or service contract" may sue for damages and other

11   legal and equitable relief.  Breach of an obligation imposed by state law will support a claim

12   under the Magnuson-Moss Act. *In re Sony Grand Wega*, 758 F. Supp. 2d 1077, 1101 (S.D.

13   Cal. 2010).  Defendants contend that Plaintiffs' Magnuson Moss Act claim must fail as a

14   matter of law as they were: 1) not obligated not given an opportunity to cure; and 2) any

15   duty owed to Plaintiffs to redesign was discharged by novation. (Doc. No. 66 at 10-15.)

16        a.    Steier's was not Obligated nor were they Afforded an Opportunity to Cure.

17        First, Defendants argue Plaintiff's Magnuson Moss Act claim must fail as Defendants

18   are not obligated to cure nor were they afforded an opportunity to cure as required by the

19   Act:

20        "No action ... may be brought under subsection (d) of this section for failure to

21        comply with any obligation under any written or implied warranty or service

22        contract ... unless the person obligated under the warranty or service contract

23        is afforded a reasonable opportunity to cure such failure to comply.

24   15 U.S.C. 2310(e).

25        Defendants contend that Fleetwood promised to redesign and reconfigure the motor

26   home and that Stier's merely "memorialized this promise for Plaintiffs in writing. (Doc. No.

27   66 at 11).  In support, Defendants attach the Work Authorization Form prepared by Stiers

28   confirming Fleetwood's promise in writing. (*Id.* Ex. 12) However, in their Response,

1   Plaintiffs repeatedly allege Stier's as the entity that initially made the promise to reconfigure

2   the floor plan. (*See* Doc. No. 91 at 3-4.)  Plaintiffs further allege that all negotiations

3   regarding the sale of the motor home as well as the reconfiguration were with Stier's. (*Id.*

4   at 13.)  A review of the Work Authorization Form attached as Exhibit 12 does not indicate

5   that Fleetwood promised to do any redesign or reconfiguration.  Indeed, Fleetwood is not

6   even mentioned on the Form.  The Form bears Camping World RV Sales logo and indicates

7   the work to be done was to "install galley pull out" and "replace galley sink." (Doc. No. 66,

8   Ex. 12.)

9       Defendants next argue that Plaintiffs failed to give them an opportunity to cure the

10  defect. (Doc. No. 66 at 11.)  Notice and an opportunity to cure are required to state a claim

11  under the Magnuson Moss Act.  A plaintiff must provide a defendant with an opportunity

12  to cure the alleged breach and the defendant itself must have refused directly to provide a

13  cure. *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1143 (N.D. Cal. 2010) (citation omitted).

14  As expected, Plaintiffs beg to differ.  First, Plaintiffs contend that they did indeed give

15  Stier's an opportunity to install the desired galley pull once the parties realized the motor

16  home purchased and delivered lacked the desired feature.  According to Plaintiffs, Stier's

17  initially took responsibility and claimed it was going to order the necessary parts and

18  contract out the labor. (Doc. No. 91 at 4.)  However, Stier's later recanted as it did not have

19  the capability to make the necessary modifications and Fleetwood stepped in and agreed to

20  modify the motor home. (*Id.*)  Mr. Randall Goodman, president of Electra, testified that a

21  sales representative from Stier's, Mr. Rocky Eldridge, assured him that "we're going to

22  change the motor home." (Doc. No. 91, Ex. 8, Goodman Dep. at 16.)

23      Accordingly, a material issue of genuine fact exists as to whether Defendants are

24  obligated to cure and whether Plaintiffs provided Defendants a reasonable opportunity to

25  cure exists.  The Court cannot grant summary judgment on this basis.

26      b.   Stier's Has No Duty to Plaintiffs by Novation

27      A novation is a substitution by agreement of a new obligation for an existing one with

28  the intent to extinguish the latter. *Davies Machinery Co. v. Pine Mountain Club, Inc.*, 39

Cal. App. 3d 18, 24, 113 Cal. Rptr.784 (Cal. Ct. App. 1974).   Whether or not a novation exists depends primarily upon the individual facts of each case. *Olympic Finance Co. v. Thyret*, 337 F.2d 62, 66 (9th Cir. 1964).   To constitute novation, there must be some evidence of an agreement or contract to substitute and the intent of the parties is a controlling factor.   *See Aetna Cas. & Sur. Co. of Hartford, Conn. v. Bettens*, 111 F. Supp. 111, 113 (S.D. Cal. 1953).

The Court cannot as a matter of law determine that a valid novation occurs.   There is insufficient evidence in the record to indicate the intent of the original parties to create a new agreement.   Plaintiffs' action of delivering the motor home to Fleetwood does not suffice to show a new agreement. Furthermore, Defendants' arguments are contradictory. On the one hand Stier's claims it was never under a duty to redesign or reconfigure the motor home. (Doc. No. 66 at 11.) Then on the other hand, by claiming a discharge of duty by novation, Stier's implies they indeed owed some duty to Plaintiffs to redesign or reconfigure the motor home. (*Id.* at 13.)   Thus, by Defendants' own admissions, a genuine issue of material fact exists precluding the Court from granting summary judgment on this basis.

c.   Motor Home has been Modified

Finally, Defendants argue Plaintiffs' Magnuson Moss claim fails as a matter of law as the motor home was "in a different condition from when Plaintiffs purchased ... [and no] warranty from Stier's attached to any work that Fleetwood performed ..." (*Id.* at 15.)   In their response,  Plaintiffs do not dispute that Stier's does not owe a warranty for work by a third party.  Instead, Plaintiffs repeatedly contend that Stier's breached an implied warranty by supplying a motor home that required subsequent modifications to meet Plaintiffs' expectations. (Doc. No. 91 at 18.)

It would then appear that the parties agree Stier's warranty does not cover work performed by Fleetwood.  However, the a genuine issue of contention still remains, whether or not Stier's breached an implied warranty at the time of sale for supplying a product that did not meet Plaintiffs' expectation.

11CV1798

D. Implied Warranties

"Merchantability" generally has been construed as a requirement that a product conforms to its ordinary and intended use. *Stearns v. Select Comfort Retail Corp.*, No. 08-2746 JF, 2009 WL 1635941, at *7-8 (citing *Am. Suzuki Motor Corp. V. Super. Ct.* 37 Cal. App. 4th 1291, 1295, 44 Cal. Rptr. 2d 526 (Cal. Ct. App. 1995).  Under California law, a breach of implied warranty of merchantability means the product does not possess even the most basic degree of fitness for ordinary use. Cal. Comm. Code § 2314(2).  This implied warranty does not "impose a general requirement that goods precisely fulfill the expectation of the buyer. Instead, it provides for a minimum level of quality. *Stearns,* 2009 WL 1635941, at *8.  However, this does not mean the alleged defect must preclude any use of the product itself. *See Isip v. Mercedes-Benz USA, LLC*, 155 Cal.App.4th 19, 26, 65 Cal. Rptr. 3d 685 (2007).

In addition to an implied warranty of merchantability, the California Commercial Code imposes an implied warranty of fitness for a particular purpose.  "Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that they buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is . . . an implied warranty that the goods shall be fit for such purpose." Cal. Comm. Code § 2315.  A particular purposes "envisages a specific use by the buyer which is peculiar to the nature of his business." *Mills v. Forestex Co.*, 108 Cal.App.4th 625, 635 n.4, 134 Cal.Rptr.2d 273 (2003).

Defendants argue no evidence of a defect existed in the motor home at the time of sale that renders it unfit for ordinary use. (Doc. No. 66 at 17.)  Plaintiffs, on the other hand, contend that there were "numerous defects that were present at the time of sale and that arose during the first year of ownership." (Doc. No 91 at 15.)  The implied warranty of merchantability only requires that the good is "substantially free of defects." *Mexia v. Rinker Boat Co., Inc.*, 174 Cal.App.4th 1297, 1303 (Cal. Ct. App. 2009).  The analysis is complicated by the fact that Plaintiffs' motor home was repaired by third party, Fleetwood, after the sale which may have resulted in new defects and/or exacerbated alleged existing

1   defects.  There are inconsistencies in the parties' briefs as to when the Fleetwood Indiana

2   repairs occurred.  The UMF states that repairs started in December 2009. (Doc. No. 85.)

3   Some portions of Plaintiffs' Response state the repairs started in late November and

4   December 2009 while other portions imply the repairs started in December 2008. (*See* Doc.

5   No. 91 at 5-7.)  The exact date of the Fleetwood repairs, which parties contend created or

6   exacerbated defects, is important for the Court to determine exactly what alleged defects

7   existed before to implicate Stier's breach of any implied warranty.  The parties' typos and

8   inconsistencies have made it difficult for the Court to analyze this issue.[1]  Plaintiffs state that

9   during their first year of ownership, seventeen (17) repair attempts were made to fix an

10  estimated fifty (50) alleged defects. (Doc. No. 91 at 15-16.)  However, because of Plaintiffs'

11  own negligence in preparing their briefs, the Court could not determine from the pleadings

12  whether these repair attempts are for defects that existed prior to or after the Fleetwood

13  Indiana repair and renovation to install Plaintiffs' galley pull.  Based upon a review of the

14  record and work orders from Fleetwood, the Court determined the repairs occurred from

15  December 2008 to January 2009. (Def. Mot. Ex. 19-20.)

16      Plaintiffs allege the defects included: 1) the house batteries not charging; 2) a

17  defective rear awning; 3) malfunctioning grey and black water tank gauges; 4) outside light

18  failure ... (Doc. No. 91 at 4.) However, Stier's failed to address most of the items Plaintiffs

19  cited to. (*Id*. at 5.)  Based on the Fleetwood work order, there also appeared to be issues with

20  unsecured wires and minor cosmetic problems. (Def. Mot. Ex. 19.)  While most of these

21  defects would not render the motor home unfit for intended use or unable to provide a

22  minimum level of quality, the Court does note the concern with the house batteries which

23  would severely hinder the use of the motor home.  Stier's contends that its technicians

24  replaced the transfer switch which resolved the house battery problems. (Doc. No. 66 at 17.)

25  Plaintiffs argue the problem still exists and have proffered expert testimony that the

26  _____

27      [1] The Court takes this opportunity to remind parties to proofread briefs submitted.
     Defendants' briefs were also full of spelling errors and inconsistencies, for example the
     table of contents did not match the actual page numbers.  Such simple mistakes detracts
28   from the substance of the briefs and wastes the Court's time in trying to determine
     exactly what the parties' meant. (Doc. No. 66.)

charging problem still persists.  (Doc. No. 91 at 5.)  Moreover, there is also a dispute with regards to how the Aqua Hot system was damaged, with experts on both sides arguing different theories.  As there are two opposing views on these problems, each supported by expert opinion, the Court is precluded from granting summary judgment on whether Stier's breached an implied warranty of merchantability.

Plaintiffs also allege Stier's breached the implied warranty of fitness.  According to Plaintiffs, they communicated their intent to use the motor home for their business as a groomsmen dressing room and rental.  From the record, it is clear that the primary source of Plaintiffs' dissatisfaction was the lack of galley pull in the motor home purchased. Defendants argue that Plaintiffs' inspection of the motor home precludes an implied warranty except as to latent defects unrevealed by a reasonable examination. (Doc. No. 19). Because the existence of a galley pull is so obvious that means Plaintiffs waived the implied warranty.

The Court partly agrees with Defendants argument. The Court fails to see how the lack of a galley pull would severely inhibit the motor home's use as a groomsmen dressing room. A groomsmen dressing room only needs privacy, adequate space, storage, and the like.  A galley pull, indeed an entire kitchen, would appear unnecessary to serve as a changing space.  However, there is a genuine issue of material fact as to whether the implied warranty of fitness was breached with regards to Plaintiffs' use of the motor home as a wedding rental.  Plaintiffs have alleged they represented that particular purpose to Stier's representatives and Plaintiffs have pled they relied upon Stier's to locate a motor home that would serve this commercial purpose.  Thus, there is a genuine issue of material fact as to whether the latent defects rendered the motor home unsuitable for rental purposes.

Thus, the Court DENIES summary judgment on whether Stier's breached and implied warranties and subsequently the Magnuson Moss Act.

**2.Whether  Subsequent Modification Bars Plaintiffs' Claims**

Defendants next seek summary judgment on whether a third party's modification of the motor home bars Plaintiffs from revoking acceptance and claiming for damages.

11CV1798

1   Furthermore, Defendants argues that Plaintiffs' post revocation use of the motor home
2   nullifies and claim for damages. (Doc. No. 66 at 19-20).

3       Under the California Commercial Code, revocation of acceptance must occur within
4   a reasonable time after the buyer discovers or should have discovered the ground for it and
5   before any substantial change in condition of the goods which is not caused by their own
6   defect. Cal. Comm. Code §2608(2). Plaintiffs attempted to revoke acceptance on March 29,
7   2011. (Def. Mot. Ex. 1.) Plaintiffs learned the motor home did not have the galley pull upon
8   inspection in October 2008. Based on Plaintiffs' own pleadings, they discovered the
9   existence of material defects by November 2008 when Plaintiffs returned the motor home
10  to Stier's for repair, including the house battery defect. (*See* Doc. No. 91 at 4.) After the
11  Fleetwood repairs, Plaintiffs again had to make several repairs and at least by April 2009,
12  discovered additional issues that allegedly severely limited their use of the motor home,
13  such as the major damage to the Aqua Hot system, water flooding, and so forth. (Doc. No.
14  8.) However, Plaintiffs waited almost two years before attempting to revoke and rescind.
15  Instead, Plaintiffs attempted numerous subsequent repairs at different facilities and even
16  took the motor home on an 8,000 mile trip to Alaska after attempting to revoke. (Doc. No.
17  91 8-9; Def. Mot. Ex. 51.)

18      Generally, the effect of a delay and the corresponding waiver of the right to rescind
19  is a question of fact. *See Mobley v. Richfield Oil Corp.*, 53 Cal. App. 2d 406, 411, 128 P.2d
20  105 (Cal. Ct. App. 1942). However, a Court may rule as a matter of law on the issue when
21  the delay is so palpably unreasonable. *Cf. Garetto v. Almaden Vineyards*, 118 Cal.App.2d
22  99, 102, 257 P.2d 477 (Cal. Ct. App. 1953). In the instant case, Plaintiffs notified Stier's
23  of their intent to revoke and rescind a full two years after discovery of all the defects that
24  allegedly existed at the time of sale. Though Plaintiffs were in fact attempting to repair the
25  problems (first through Stier's, then Fleetwood, then numerous other facilities), the fact
26  remains that Plaintiffs waited a full two years before notifying Stier's of any attempt to
27  revoke and rescind. Moreover, the Plaintiffs' action after attempting to revoke and rescind
28  is inconsistent with any intent to do so. The Court agrees with Defendants that the delay of

11CV1798

1  two years was unreasonable and would find that a rational trier of fact could not disagree.

2  However, the Court cannot conclude as a matter of law that any subsequent post revocation

3  use or subsequent repairs by a third party completely cuts off Stier's liability for the defects

4  Plaintiffs allege existed at the time of sale.

5      Finally, although Defendants argue that the substantial modification made to the

6  motor home bars Plaintiffs' claims for damages, they have failed to cite to any case law that

7  so establishes this rule. (Doc. No. 66 at 19.)  Although Defendants cite to the California

8  Commercial Code, this only supports their contention that Plaintiffs' have effectively

9  waived revocation by substantially changing the motor home's condition. (*Id.*) The Court

10  agrees that Plaintiffs have waived their right to revoke and rescind based on the unreason-

11  able delay in notifying Stier's as well as their actions, inconsistent with the intent to revoke

12  or rescind. However, the Court cannot make the next inferential leap Stier's argues for to

13  find that Plaintiffs have also effectively waived their right to claim for damages arising from

14  alleged defects existing at the time of sale.

15      Accordingly, the Court GRANTS summary judgment finding that Plaintiffs waived

16  revocation but DENIES granting summary judgment as to whether subsequent modification

17  completely cuts of Stier's liability for alleged defects that existed prior to the repairs.

18  **3. Stier's Alleged Negligent Repair**

19      Lastly, Defendants seek summary judgment to declare Stier's did not negligently

20  repair the motor home.  Defendants argue that Stier's only performed one repair on the

21  motor home, replacing the transfer switch, and that no problem exists with the transfer

22  switch today. (Doc. No. 66 at 22.)  However, Plaintiffs argue that the initial problem was

23  the  battery charging issue which Stier's attempted to fix by repairing the transfer switch.

24  Plaintiffs contend that Stier's negligently diagnosed the repair as the battery charge problem

25  still persists.  As stated above, both parties have proffered differing expert testimony as to

26  the cause and remedy of the battery problem.  Thus a genuine issue of material fact exists

27  as to whether or not Stier's negligently repaired the motor home.  Based on the record, the

28  Court is precluded from granting summary judgment on this issue.

**CONCLUSION**

The Court:

    1. DENIES Defendants' summary judgment motion on whether Stier's breached any implied warranties and subsequently the Magnuson Moss Warranty Act.

    2. DENIES Defendants' summary judgment on whether a third party's repairs cuts off Stier's liability as to alleged defects existing at the time of sale.

    3. GRANTS summary judgment on whether Plaintiffs may revoke acceptance and rescind the transaction.

    4. DENIES summary judgment on whether Stier's negligently repaired the motor home.

IT IS SO ORDERED.

DATED:  October 25, 2013

Hon. Anthony J. Battaglia
U.S. District Judge

11CV1798